**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER-OPINION & ORDER

July 27, 2006

Abraham S. Alter, Esq.
Langton & Alter
P.O. Box 1798
2096 Saint Georges Avenue
Rahway, NJ 07065

Vernon Norwood, Esq.
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

      Re:    **Brenda Wright v. Commissioner of Social Security**
             **Civil Action No.: 05-3717 (JLL)**

Dear Counsel:

      This matter comes before the Court pursuant to section 405(g) of the Social Security Act (hereinafter the "Act"), as amended, 42 U.S.C. § 405(g). Plaintiff Brenda Wright seeks a review of a final decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner") denying her claim for disability insurance benefits under the Act. The Court has jurisdiction to review this matter under section 405(g) and decides this matter after having considered the papers submitted by the parties, as well as the oral argument of the parties held on

June 5, 2005. The issue to be decided is whether the Commissioner's decision to deny Plaintiff's application for disability insurance benefits from September 1, 2001 through October 15, 2002 is supported by substantial evidence.[1] For the reasons set forth below, this Court concludes that the record provides substantial evidence supporting the Commissioner's determination that Plaintiff was not disabled from September 1, 2001 through October 15, 2002. Thus, the Court affirms the Commissioner's decision denying Plaintiff's disability insurance benefits.

## BACKGROUND FACTS

### A.   Plaintiff's Personal and Medical History

On March 27, 2001 Plaintiff filed an application for disability insurance benefits. Plaintiff is a female born on March 1, 1958 with a high school education and an unskilled work background. At the time of her application, Plaintiff was 5'8" in height and weighed 340 pounds. (R. at 75). In her application she alleged she was disabled as a result of back pain, headaches, leg and foot pain, and nervous problems. (R. at 76). Her alleged onset date is August 6, 2000. (R. at 61). At that time Plaintiff alleged that she quit her job as a nurse's aide due to incontinence, swelling in her knees and ankles, and depression. Plaintiff resumed work as a private duty nurse from September 2001 through December 2001 and earned approximately $11,649. She quit this job in December due to allegedly continued problems with incontinence and depression. She again resumed work as a nurse's aide in October 2002 and continued such work through the date of the hearing.

---

[1] Plaintiff requested a closed period of disability from August 6, 2000 through October 15, 2002. (R. 297). She was awarded benefits only for the period of August 6, 2000 through August 31, 2001. (R. 26). Therefore the only time frame at issue before this Court is from September 1, 2001 through October 15, 2002.

On April 25, 2000, Plaintiff was admitted to Christ Hospital with complaints of chest pain and shortness of breath, as well as a history of bronchial asthma. (R. at 144-66). According to the records, Plaintiff was treated by treated by Parvez Alam, M.D. and Medhat El-Amir, M.D. She was discharged two days later with diagnoses of atypical chest pain, back pain, osteoarthritis, and a history of asthma.

Plaintiff was subsequently treated by Dr. El-Amir On January 17, 2001 for complaints of urinary incontinence, atypical chest pain, back pain, lower abdominal pain, and knee pain. (R. at 172-200). Dr. El-Amir's treatment records reveal that Plaintiff was diagnosed with osteoarthritis, obesity, and unstable angina, as well as anxiety and depression. The doctor also stated in writing on January 23, 2001 that he opined that Plaintiff was disabled as of August 3, 2000 due to unstable angina, based on symptoms of dyspnea, palpitations and recurrent chest pain. (R. at 175). He found that her estimated recovery date was March 15, 2001. (Id.).

On January 17, 2001 Plaintiff began treatment with Ahmed El-Havasis, M.D. for retrosternal chest pain, and was prescribed Protonox. (R. at 167-71). After not seeing any improvement a cardiac catheterization was performed on February 28, 2001 to rule out coronary artery disease. (Id.). The cardiac catheterization revealed normal coronary arteries and Plaintiff was referred back to her primary physician. (Id.).

In May 2001, Plaintiff began supportive counseling at Women Rising for domestic violence issues. She also began outpatient psychotherapy at Jersey City Medical Center in June 2001 for depression and anxiety, for which she was prescribed Ativan and Paxil. The record reflects that between July 13, 2001 and November 26, 2001 Plaintiff had five broken or cancelled appointments and attended only two appointments. (R. at 231-32). During one of those

appointments, on August 22, 2001, the report indicates that she was more animated and her frequent crying spells had stopped. (R. at 232). During the October 22, 2001 visit, Plaintiff admitted to not taking her medication, Paxil, as prescribed. (R. at 231).

Luis Vassallo, M.D. performed an orthopedic consultative evaluation on July 16, 2001. (R. at 202-04). He concluded that Plaintiff was an obese patient that walked without a limp and did not need any hand held assistive device for ambulation. (R. at 203). He reported that while she did have some "mildly diminished motion on flexion of both hips and knees and diminished motion of both shoulders without any neurological deficit in both upper and lower extremities," she is able to "use both hands for fine and gross manipulation." (R. at 203-04).

A psychiatric consultative evaluation performed on July 23, 2001 by Joseph Buceta, M.D. led to him diagnosing the Plaintiff with depressive disorder, not otherwise specified. (R. at 211). Dr. Buceta concluded that her psychiatric prognosis was fair and that she was able to handle her own funds. (Id.).

On August 13, 2001, a State agency psychiatric consultant, Dr. I. Multami, reviewed the evidence in the record and concluded that Plaintiff retained the ability to perform work-related activities where there was minimal contact with others. (R. at 215).

Dr. Abaid Choudry performed an internal medicine consultative evaluation on June 5, 2002. (R. at 255-60). He diagnosed Plaintiff with morbid obesity, degenerative joint disease related to obesity with probable radiculopathy, uncontrolled hypertension, and right ear deafness. (R. at 257).

A psychological consultative evaluation done that same month by Dr. Gerard A. Figurelli revealed, based upon Plaintiff's subjective reports, that Plaintiff had a major depressive disorder,

recurrent, mild, chronic type. (R. at 265). While Plaintiff reported that she had been treated in 2001 for depression, she reported that she was not compliant with taking the psychotropic medications she had been prescribed in July 2001, and she was not currently undergoing any psychotherapy or counseling. (R. at 261, 263). Dr. Figurelli also noted that it was not possible for him to ascertain the nature or severity of her subjective medical complaints. (R. at 264).

The Plaintiff was evaluated on July 3, 2002 by Dr. I. Ghosh for a consultative psychological assessment. (R. at 215). After reviewing the file he affirmed the findings of Dr. Multami. (Id.).

### B.     Procedural History

Plaintiff filed an application for Disability Insurance Benefits on March 27, 2001, and was denied. She then filed a request for reconsideration, which was also denied. Plaintiff requested a hearing and this was scheduled for February 24, 2003 in Newark, New Jersey. However, since the Plaintiff failed to appear at this hearing and never responded to the Notice to Show Cause for Failure to Appear, a dismissal of the request for hearing was issued on March 13, 2003. Plaintiff then filed a request for review by the Appeals Council on May 12, 2003, which subsequently remanded the case for further clarification and a new hearing. This hearing was held before Administrative Law Judge Dennis O'Leary (hereinafter the "ALJ") on February 3, 2004 in Newark, New Jersey. On February 27, 2004, the ALJ entered a decision granting Disability Insurance Benefits to Plaintiff for the period of August 6, 2000 through August 31, 2001, rather than for the requested period of August 6, 2000 through October 2002.

Plaintiff timely filed an appeal to this Court of the ALJ's decision. Plaintiff filed her Complaint on July 26, 2005. At the hearing before the ALJ and on appeal, Plaintiff has been

represented by the law firm of Langton and Alter.

## LEGAL STANDARDS

### A.  Disability Defined

Under the Social Security Act, a claimant must demonstrate that she is disabled based on an "inability to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A).  A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [she] is not only unable to do [his] previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Social Security Regulations set forth the following five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. §4404.1520(a)(4):

> (4) The five-step sequential evaluation process. The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow:
>> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
>> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not

>disabled. (See paragraph (c) of this section.)
>(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
>(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)
>(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 404.1560(c).)

**B.**     **Burdens of Proof**

The five-step sequential evaluation involves shifting burdens of proofs. Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing at step one that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. §404.1520(a)-(c). If the claimant establishes the initial burdens, she must next demonstrate step three that her impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. §404.1520(d). If she makes this showing then she is presumed disabled. If she cannot show this, then at step four she must show that her residual functioning capacity ("RFC") does not permit her to return to her previous line of work. 20 C.F.R. §404.1520(e). If the claimant cannot show this, then in the final step, step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. §404.1520(f). Note that the burden only shifts

to the Commissioner at step five. If the Commissioner cannot meet this burden, the claimant shall receive benefits.

      **C.**     **Standard of Review**

The main issue before this Court is whether the ALJ's determination to deny disability benefits is supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is more than a "mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence may be slightly less that a preponderance. Hanusiewicz v. Bowen, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court has a duty to review the evidence in its totality and reviews whether the Commissioner's determination was reasonable. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). The Commissioner has a duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, [she] must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986). The reviewing court gives deference to the administrative decision, but the court has a duty nonetheless to scrutinize the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). The district court however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

## **DISCUSSION**

In reviewing the ALJ's decision to determine whether it is supported by substantial evidence, this Court abides by the principle established in Cotter that an ALJ must provide an indication of the evidence that is rejected so that a reviewing court can determine whether significant probative evidence was either not credited or simply ignored.  Cotter, 642 F.2d at 705. Moreover, "there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record."  Cotter, 642 F.2d at 706.  Thus, the ALJ must analyze the probative evidence and provide a sufficient explanation of which was relied upon, and which was rejected, in order to reach his conclusion.

Plaintiff asserts several arguments in favor of reversing the Commissioner's determination.  First, Plaintiff argues that the ALJ erred when he found "that the medical evidence obviously precluded plaintiff's ability to sustain work activity beginning on August 6, 2000, unnaturally and illegally, terminated plaintiff's closed period of disability on August 31, 2001, thereby depriving her of over 13 months of disability to which the medical evidence clearly indicated her entitlement."  (Pl. Br. at 9).  Plaintiff contends that the ALJ's reasoning is not consistent with the medical evidence of the Commissioner's own consultative physicians.  To support her claim of disability for the duration after August 31, 2001, Plaintiff specifically points to the consultative visits with Dr. Figurelli and Dr. Choudry that occurred about nine months after Plaintiff was deemed no longer disabled by the ALJ.

On June 22, 2002, Dr. Figurelli's consultative psychological report indicated that her symptoms were consistent with DSM-IV diagnoses of major depressive disorder, recurrent, mild, chronic type.  (R. at 261-65).  In addition, with respect to her physical health, on June 5, 2002,

Dr. Choudry's orthopedic consultative report indicated that Plaintiff "walks with a limping, slow gait due to her morbid obesity . . . is unable to bend over more than 40 degrees due to pain in the back . . . is unable to climb onto the examination table . . . has palpable crepitations in both knees on passive range of motion." (R. at 256). Dr. Choudry diagnosed Plaintiff with morbid obesity, degenerative joint disease related to obesity with probable radiculopathy, uncontrolled hypertension, and right ear deafness. (R. at 257).

Second, it is Plaintiff's position that she was entitled to benefits for the duration of the closed period despite her four month return to work as a nurse's aide because it was either an "unsuccessful work attempt" or a "trial work period." Indeed, Plaintiff faults the ALJ for not finding her attempt at work to fall into one of these categories because he did not explain his apparent rejection of medical evidence, described above, which indicated that the Plaintiff continued to face both physical and mental impairments in 2002, after she discontinued working.

She further argues that the ALJ wholly failed to explain why he rejected the argument that the four-month period in which she returned to work as a nurse's aide should have been considered a trial work period.[2] Plaintiff's counsel argued during oral argument that the trial work period began automatically once the ALJ determined that she was disabled. (Oral Argument, p. 11). He then claimed that because she only worked for four months, rather than the full nine months, she is still entitled to her disability benefits.

The Commissioner opposes, contending that the Commissioner's decision that Plaintiff was not disabled subsequent to August 31, 2001 is supported by substantial evidence and should

---

[2]A trial work period, as defined in 20 C.F.R. §404.1592, allows a person to attempt to return to work for a period of nine months (which do not have to be consecutive) without having such services be considered proof that the disability has ended.

-10-

be affirmed. The evidence showed that Plaintiff was engaged in substantial gainful activity during the relevant period, and her earnings were not earned during an unsuccessful work attempt. Specifically, the record is devoid of any arguments, which would support a finding of an unsuccessful work attempt, namely that Plaintiff alleged frequent absences, unsatisfactory work performance, temporary remission, or that she worked under any special circumstances. The Commissioner contends that the ALJ properly evaluated the medical evidence of record and concluded that Plaintiff's impairments after August 31, 2001 did not satisfy the durational requirements of the Act.

As stated in Plaintiff's brief: "The Commissioner must first inquire whether the claimant is currently engaging in substantial gainful activity. If so, than a finding shall be made that the individual is not under a disability, regardless of medical condition, age, education and work experience. 20 C.F.R. 404.1520(b)."

Under the Social Security Act, disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration's ("SSA") regulations include guidelines to determine whether work qualifies as substantial gainful activity:

> We will generally consider work that [the claimant] is forced to stop after a short time because of [his] impairment as an unsuccessful work attempt and [his] earnings from that work will not show that [he is] able to do substantial gainful activity.

20 C.F.R. §§ 404.1574(a)(1). The concept is further refined in Social Security Ruling 84-25.[3]

---

[3]Social Security Rulings ("SSR") are "final opinions and orders and statements of policy and interpretations" that have been adopted by the Administration. 20 C.F.R. § 402.35 (1999).

According to SSR 84-25:

> If work lasted more than 3 months, it must have ended or have been reduced to the non-SGA level within 6 months due to the impairment or to the removal of special conditions (see below) related to the impairment that are essential to the further performance of work and:
> 
>   a. There must have been frequent absences due to the impairment; or
> 
>   b. The work must have been unsatisfactory due to the impairment; or
> 
>   c. The work must have been done during a period of temporary remission of the impairment; or
> 
>   d. The work must have been done under special conditions.

See also 20 C.F.R § 404.1574(b)(6)(iii)(C)(4).

That SSR further states that a plaintiff may not prove a reduction in work effort solely through his own testimony. "[I]f impartial supporting evidence is not already a part of the claims file, confirmation with the employer is required. If the information from the employer is inconclusive or if none is available, the reason for work discontinuance or reduction may be confirmed with the person's physician or other medical source." SSR 84-25. That other source could "state whether, in his or her opinion or according to the records, the work discontinuance or reduction was due to the impairment." Id.

Here, Plaintiff offers no evidence to support a finding that one of these four conditions was met, thus she has not established an unsuccessful work attempt. Although not mentioned anywhere in the brief, at oral argument before this Court Plaintiff's counsel asserted that her attempt at work occurred during a temporary remission.[4] (Tr. at 8). Besides her own testimony,

---

Once published, as was SSR 84-25, these rulings are binding precedent upon ALJs. Heckler v. Edwards, 465 U.S. 870, 873 n. 3 (1984).

[4]In discussing "unsuccessful work attempt" at oral argument, this Court stated the four special conditions set forth in 20 C.F.R § 404.1574(b)(6)(iii)(C)(4), and the following colloquy

Plaintiff did not provide any supporting evidence from her employer or medical doctors that would confirm her testimony. Thus, as stated in SSR 84-25, the ALJ does not rely solely on the claimant's testimony. Further, the consultative reports of Dr. Figurelli and Dr. Choudry do not discuss her attempt at work, a temporary remission, or her inability to continue working. Given the present record it is reasonable that the ALJ concluded "as of September 1, 2001, there is no evidence to support her contentions of an unsuccessful work attempt, nor is there evidence to establish disability after that date." Accordingly, Plaintiff is unable to prove that she had not engaged in substantial gainful activity for the requisite period.

Lastly, Plaintiff argues in the alternative that her SGA was only a trial work period. There is nothing in the record before this Court, prior to the present appeal, demonstrating that Plaintiff asserted that her return to work for those four months was a trial work period. To the contrary, Mr. Langton only argued to the ALJ that those four months were an "unsuccessful work attempt." (R. at 297). Mr. Langton specifically made a "motion for a closed period from August of 2000 through October 15 of 2002, with the caveat there's an unsuccessful work attempt in there when she was on private duty nursing for four months." (Id.). Moreover, Plaintiff's brief only references "trial work period" once on page ten of her brief and fails to even discuss the factors or cite any relevant law.[5] Thus it is no surprise to this Court that the Commissioner's

---

took place:
```
        THE COURT:       . . . Where are there any of the conditions present in your case?
        MR. ALTER:       Temporary remission.
        THE COURT:       Why?
        MR. ALTER:       She was feeling better, and she went back to work.
```
(Tr. at 8:12-17).

[5]It is also worth mentioning that similar to the brief mention of Plaintiff's new "trial work period" theory on appeal, Plaintiff's counsel also failed to discuss the factors or cite any relevant

counsel did not address the issue in the responsive brief. Plaintiff's counsel did, however, spend a great deal of time discussing this theory at oral argument. The role of this Court is to review the administrative record and determine whether there is substantial evidence in the record to support the ALJ's decision. This Court has no fact-finding function. Plaintiff on appeal is presenting an entirely new legal theory. There is no explanation in the record as to why this legal theory was not presented prior to this appeal. Moreover, Plaintiff was represented by the present counsel throughout the underlying proceedings. Given that this legal argument was not presented to the ALJ and no explanation has been presented to this Court seeking a remand to make such an argument, the "trial work period" theory is not properly before this Court.

Since Plaintiff returned to work and engaged in SGA from September 2001 to December 2001, the remainder of the closed period of disability, January, 2002 through October 15, 2002, does not amount to twelve months and Plaintiff fails to meet the durational requirements. 42 U.S.C. § 423(d)(1)(A).

Despite this Court's ruling, the Court is sympathetic to Plaintiff's medical condition, and admires her return to work. The Court does "recognize that if the claimant had decided not to work, she might have qualified for disability benefits because she may have been able to prove that she was incapable of engaging in substantial gainful activity for at least twelve months." Nettles v. Sullivan, 956 F.2d 820, 823 (8th Cir. 1992). Nevertheless, this Court holds that the ALJ's determination that Plaintiff was only under a disability from August 6, 2000 through August 31, 2001 was supported by substantial evidence in the record, even if this Court may have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). As

---

law regarding "unsuccessful work attempt" in the brief on appeal.

the Court finds that substantial evidence existed to support the ALJ's determination that Plaintiff was able to return to her past relevant work as of September 1, 2001, based on her substantial gainful activity, and was thus not disabled, it must affirm the decision of the Commissioner.

## **CONCLUSION**

For the reasons set forth above, it is on this 27th day of July, 2006,

**ORDERED** that final decision of the Commissioner in the within matter be, and the same is hereby, AFFIRMED; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** the Court's file on this matter.


DATED: July 27, 2006                                         /s/ Jose L. Linares
                                                             JOSE L. LINARES,
                                                             UNITED STATES DISTRICT JUDGE